Staples, J.,
delivered the opinion of the court.
The plaintiff in the court below was the lessee of a fishery on the Potomac river, on a point where the tide *764 ebbs and flows, and the stream is navigable for the largest vessels.
The value of this landing was greatly impaired by the construction of the Alexandria and Fredericksburg railroad along the line of the river, and the plaintiff brought his action to recover damages for the injury. One of the questions raised in the case is whether the owners of property on navigable waters are entitled to compensation for injuries of this character. It is insisted by defendant’s counsel that the Potomac, being a navigable river at the point in question where the tide ebbs and flows, the state owns the bed‘of the stream to high-water mark; and that the privilege of fishing in its waters is a mere license which may be revoked at any time; and, further, that the legislature may lawfully authorize the construction of a railroad along the water front, and the owner can claim no compensation for any injury which he may sustain ; it is damnum, absque injuria.
It is a suflicient answer to this view to say that the legislature has frequently recognized the rights of owners in their respective fisheries on the Potomac, and by various statutes has protected them in the enjoyment of these rights.
The 18th, 19th and 20th sections of chapter 100, Code of 1878, contain very explicit provisions on the subject. When, under the faith, of these enactmeuts, the owner has expended money in improving his landing and fishing beds, in erecting buildings and the necessary fixtures for carrying on his operations, he has acquired valuable rights of property which cannot be disturbed for the benefit of any corporation or private person without making just compensation. It has been held in numerous cases that the owner of land bounded on a navigable stream has certain riparian lights, whether his title extends to the middle of the stream or not. Among these are free access to the navigable part of the stream, and *765 the right to make a landing, wharf or pier for his own use, or for the use of the public. These rights are valuable, and are property, and can be taken for the public good only upon due compensation made. They are to be enjoyed, subject to such general rules and laws as the legislature may pass for the pi’otection of the public right in the river as a navigable stream. This is the doctrine of the supreme court of the United States 'in Dutton v. Strong, 1 Black’s U. S. R. 23; Railroad Company v. Morgan, 7 Wall. U. S. R. 256, 272; Yates v. Milwaukee, 10 Wall. U. S. R. 497; and by this court in Norfolk County v. Cooke, 27 Gratt. 430.
It is difficult to see why the same principle does not apply to a fishery and landing improved by the labor and money of the owner. But if it be considered that the privilege of fishing, as ever used by riparian owners in navigable waters, is a mere license which the legislature may revoke in favor of a railroad company, it is not'to be supposed it would exercise this power without inquiring compensation to be made for piivate property, taken or destroyed, or other specific injui’y to the owner, resulting fi’om the appropriation. Nothing short of an express legislative declaration to that effect, or implication equally sti’ong, should be so construed.
In the present case the act of incorporation authorizes the company, as in other cases of public improvements, to acquire land for the purposes of the road along its line, upon making compensation to the owner. There is nothing in the act giving this company peculiar pi’ivileges, or distinguishing it from other corporations.
Another question arising in this case is, whether the defendants have made due compensation for all damages to the land in question, and the fishery, arising from the construction of the l’oad. The defendants claimed in the court below that commissioners appointed for the purpose had assessed the damages at $-3,353, and that this *766 amount had been paid to the tenant of the freehold, as just compensation for the land taken, and for damáges to the residue of the tract, beyond the peculiar benefits derived from the improvement.
On the other hand, the plaintiff claimed that the company did not pursue the line as shown to the commissionersj but in fact constructed the road in an entirely different line.
How, if this allegation is true; if the company departed from the route for which the damages were assessed, it is clear that this assessment cannot preclude the plaintiff' from maintaining his action for any injury he has sustained. Upon this issue the parties went before the jury. To this point their evidence was directed, and upon it a verdict was rendered for the plaintiff'. The circuit judge was satisfied with the finding, and refused to disturb it. He declined to certify the evidence upon the ground that it was conflicting. This would seem to settle the question, unless we are to set aside a verdict upon mere conjecture that the jury ought to have decided otherwise.
The next question is as to the quantum of damages given by the jury. Some of the judges are inclined to think the damages excessive, and none of us are entirely satisfied with the finding. But here again a difficulty occurs in the fact there is nothing in the record which would warrant an appellate court in disturbing the verdict. The only witness examined on this point was the plaintiff', who was confronted with the jury, and whose testimony-was uncontradicted. He proved that he had leased the fishery for five years, at an annual rent of $500 ; that he expended seven or eight thousand dollars in putting up the necessary buildings and in cleaning out the fishing-berth and carrying on the fishery; that he had employed during the season of 1871 fifty or sixty hands, Whose average wages were $1.25 per day; that the re *767 moval of his capstans involved an expense of a hundred and fifty dollars; that one of the fish buildings was removed by the defendants, and in the work of grading the road mud and brush were thrown into the fish-berth, damaging his seine to the extent of two or three hundred dollars, and that this occurred on several occasions. The-jury and the'presiding judge believed these statements. Upon what ground is this court to discredit them ? Certainly there is nothing in the record to warrant us in so doing. Had this action been brought after the termination of the lease, and it had appeared the plaintiff had lost .the benefit of the fishery entirely by reason of the construction of the road, no one would think of questioning or distui’bing the verdict. ■
But the action was in fact instituted before two years of the lease, had expired, and the defendant’s counsel, laying hold of a single expression used by the plaintiff' in giving his testimony, deduces the conclusion that the damages are excessive. The plaintiff' said that the general result of the interruptions by the location and construction of the road was the loss of the fishing season of 1871, and the counsel insists that this loss was greatly less than the amount, of the verdict according to the plaintiff’s own showing.
The expression referred to must be taken in connection with all that was said by the witness. The plaintiff having described to the jury the manner in which his operations were interrupted, proceeded to say that the general result of these interruptions was the loss of the fishing season. He did not mean to state that this was his entire damage. The declaration is framed with a view to a recovery of compensation, not only for the loss of the season of 1871, but for all other injuries arising from the construction of the road, and the testimony was directed to all the grounds mentioned. The plaintiff' proved that he was liable to his lessee for the four years’ rent, amounting to two *768 thousand dollars. lie proved a fair rental of the fishery was from one thousand to fifteen hundred dollars, besides the other damage sustained, and that he had never used the fishery after the company took possession of the ground. If these statements were not true, it was easy for the defendants to show the fact; or if the fishery was not permanently injured by the location of the road, the matter was susceptible of the clearest proof, for the case was not tried till the November of 1873.
The defendants did not prove or attempt to prove anything relating to the damages. Either the testimony of the plaintiff was true, or the defendants were guilty of the grossest negligence in failing to meet it with counteracting evidence. In neither aspect of the case can this court interpose to relieve them. "While the right to set aside a verdict for excessive damages is now almost universally conceded, it is a right to be cautiously exercised by the trying court. The appellate court, of course, will not do so unless it can plainly see that injustice has been done. The cases on this subject are too familiar to require citation or comment.
Upon the whole, we are of opinion there is no error in the judgment, and the same must be affirmed.
Judgment appirmed.